No. 80-59

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

THE STATE OF MONTANA,

                    Plaintiff and Respondent,

        -vs-

CHARLES HENRY GRAVES,

                    Defendant and Appellant.

Appeal from:    District Court of the First Judicial District,
                In and For the County of Lewis & Clark,
                Honorable Gordon R. Bennett, Judge presiding.

Counsel of Record:

        For Appellant:

            Jeffrey Sherlock argued, Helena, Montana
            W. William Leaphart argued, Helena, Montana

        For Respondent:

            Hon. Mike Greely, Attorney General, Helena, Montana
            Charles Graveley argued, County Attorney, Helena,
            Montana

                            Submitted:  JUN 16 1980
                             Decided:   JAN 7 1981

Filed: JAN - 7 1981

_____
              Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Defendant Charles Henry Graves was charged by information with deliberate homicide and aggravated assault. He was convicted of mitigated deliberate homicide in the Lewis and Clark County District Court and sentenced to twenty years in the Montana State Prison with ten years supended.

Defendant Charles Graves, a 20-year old black man with an eleventh grade education, spent most of April 17, 1979, drinking beer with friends in Helena, Montana. That evening defendant and several friends went to "Club 21" where he had several more drinks. There he met a woman from Idaho who told him that she was going to "Mister Lucky's." After she had left, Charles Graves obtained a ride to Mister Lucky's at approximately 1:00 a.m. on April 18, 1979. The defendant approached the Idaho woman, sat down next to her at her table and began talking with her. The woman told him that she did not wish to be with him. Graves left the table and sat at the bar and the woman from Idaho joined Craig Marlow, the decedent, at another table.

A short while later the defendant approached Marlow's table to ask the Idaho woman to dance. Before defendant could ask her to dance, Craig Marlow jumped up and told the defendant to stop hassling the woman. The Idaho woman then told defendant that she did not want to dance and he returned to his seat at the bar.

After contemplating Marlow's actions, Graves returned to the table to inquire as to why Marlow was so belligerent. Marlow allegedly jumped up and made some comments about black men thinking they could get all the women and said there wasn't enough room in Helena for blacks. At this point defendant said, "Come outside, and I'll bust your jaw." The bartender came over and told them to "Cool it." Graves then began walking away when someone yelled "Take it outside." The defendant looked back, and Marlow allegedly said, "Hey Mother F----r come outside."

Defendant then followed Marlow outside. Two white men, one of whom had been sitting with Craig Marlow earlier, allegedly followed Graves outside. When Marlow reached the bottom of the stairs, and while defendant was still on the steps, he turned and hit defendant twice on the head. Charles Graves then stabbed Craig Marlow twice with a knife, once in the abdomen and once in the chest.

Graves testified that he was "kind of drunk" as opposed to "real drunk," that he was afraid all three white men were going to jump him and that he had stabbed the defendant before he knew what had happened.

After the stabbing the defendant attempted to assist others in loading Marlow into a vehicle to be transported to the hospital. One witness testified that the defendant appeared to be in a state of shock, while others testified that he was very calm and completely in control of himself. Graves went into Mister Lucky's to get his jacket and then began walking down Airport Road toward Helena.

He was stopped by two police officers who were responding to a call from Pete Hartman, an airport security guard. Hartman told the police that a stabbing had occurred at Mister Lucky's saloon and that he was following the black suspect down Airport Road. Officer Sturm proceeded to intercept the suspect and saw the defendant walking near the State Publishing Building. Sturm pulled his vehicle up in front of the defendant. Officer Melton and Pete Hartman pulled their vehicles up behind the defendant. Both police officers were uniformed, armed and driving marked police cars. Hartman was also armed and wearing a security guard uniform. Officer Melton called out to the defendant to "hold it," and Officer Sturm approached the defendant. Sturm asked defendant if he had been involved in an altercation at Mister Lucky's. Graves responded that he had. When asked if a knife was involved, Graves said "yes" and turned the knife over to the

police. At this point the officer noticed blood on defendant's hands and placed him under arrest and gave him his <u>Miranda</u> warnings.

En route to the police station, the defendant made several remarks concerning his involvement in the incident. He was booked into the city jail. The same morning at approximately 4:25 a.m., the defendant signed a written confession at the county jail after once again being informed of his rights and after signing a statement that he knew and understood his rights. A urine sample was also taken at this time.

A suppression hearing was held on August 30, 1979. The defendant sought to supress his oral confession in the police car, his written confession taken at the county jail, the knife used, and the urine sample. The defendant did not take the stand in the suppression hearing, but he did submit an affidavit. The court initially refused to accept the affidavit; however, at the urging of defense counsel, the court agreed to accept the affidavit if defense counsel would furnish some precedent for its admittance. In denying the motion to suppress, the court did not reveal whether or not the affidavit was considered.

The day of the trial the prosecution moved to endorse five additional witnesses on the information. These witnesses were connected with an armed robbery which occurred the night before trial. The prosecution believed that the defendant was involved and told the court that they would file additional armed robbery charges against the defendant the same day. The court reserved ruling on the motion. No charges were ever filed, nor were the additional witnesses called.

Graves testified at trial and fully admitted stabbing Craig Marlow. His only defense was self-defense. He was convicted of mitigated deliberate homicide and sentenced to twenty years in the Montana State Prison with ten years suspended. Graves was also designated a nondangerous offender.

The following issues have been presented on appeal:

- 4 -

1. Whether the District Court erred in denying defendant's motion to suppress, which was based on police procedures and a lack of probable cause to arrest?

2. Whether there was sufficient evidence to support the judgment of conviction of mitigated deliberate homicide?

3. Whether the District Court committed reversible error in refusing to give defendant's proposed self-defense instruction?

4. Whether the prosecution's pretrial conduct prejudiced the defendant's case and justifies reversal?

Defendant asserts that the District Court erred in denying his motion to suppress because: (1) the police failed to conform to mandatory police procedures; (2) Miranda warnings were not given prior to any questioning; (3) the arrest was not supported by probable cause; (4) the confessions and the relinquishment of the knife were involuntary as a result of the coercive atmosphere and defendant's mental and emotional condition; and (5) the taking of the knife constituted an unlawful warrantless seizure.

Defendant first contends that the police officers failed to comply with mandatory provisions contained in Montana's "stop and frisk" statutes, sections 46-5-401 and 46-5-402, MCA, and therefore, suppression is required. These statutes and similar statutes in other jurisdictions were enacted to codify the rule announced in the landmark "stop and frisk" case of Terry v. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. In Terry, the police officer stopped and initiated a pat down frisk on two men who he reasonably believed may be armed and dangerous. The case held that under specified conditions, "Such a search is a reasonable search under the Fourth Amendment, and any weapons seized may properly be introduced in evidence against the person from whom they were taken." 392 U.S. at 31, 88 S.Ct. at 1885, 20 L.Ed.2d at 911. In short, Terry and the Montana statutes codifying the rule announced therein apply to a much different

fact situation than our present case.

In our present case there was no "stop and frisk". Instead the defendant was merely stopped by the police and asked investigatory questions designed to identify him as a witness or a suspect in the reported crime. The defendant was not frisked, nor were the police officers searching for a dangerous weapon. As a consequence, the "stop and frisk" statutes based on the rule announced in Terry do not apply to this situation.

Turning next to defendant's Miranda issue, it is well established that Miranda does not apply until a suspect is "in custody" or "deprived of his freedom in any significant way." As was stated in Oregon v. Mathiason (1977), 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714:

> "Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer Miranda warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect. Miranda warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.' It was that sort of coercive environment to which Miranda by its terms was made applicable, and to which it is limited." 429 U.S. at 495, 97 S.Ct. at 714, 50 L.Ed.2d at 719.

In our present case the defendant was definitely not in custody when Officer Sturm asked him the two questions. Further, any deprivation of freedom occurring was the result of the "coercive aspect" incidental to any conversation between an armed, uniformed police officer and a suspect. As a result, the police were not required to give the Miranda warnings prior to the investigatory questions.

The defendant next contends that suppression is required because of a lack of probable cause to arrest.

The following chain of events which contributed to the

police officers' knowledge occurred prior to the arrest. The police officers received a call from an airport security guard which reported that a stabbing had occurred at Mister Lucky's and that the black suspect was heading west on Airport Road. The security guard did not indicate how he acquired the knowledge. When the officers approached, with the informant present, the defendant admitted that he was involved in an altercation and that a knife was involved. The defendant then handed the knife to the police officer. At this time the policemen observed blood on the knife, on defendant's hands, and on his clothing. At this point the report was fully corroborated by defendant's production of the knife, the blood on his hands and clothing and his admission that he was involved in a knife altercation at Mister Lucky's.

In a case involving a partially corroborated informant's tip, the United States Supreme Court stated:

"Probable cause exists where 'the facts and cir-cumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed. Carroll v. United States, 267 U.S. 132, 162." Draper v. United States (1959), 358 U.S. 307, 313, 79 S.Ct. 329, 333, 3 L.Ed.2d 327, 332.

It is obvious that the officers possessed sufficient knowledge to warrant a belief that an offense had been committed and that it was committed by the defendant.

Defendant next contends that the confessions and the pro-duction of the knife were involuntary as a result of the defendant's lack of sophistication. Defendant relies on State v. White (1965), 146 Mont. 226, 405 P.2d 761, for the proposition that the age of the defendant, his level of education, and his lack of experience with law enforcement procedures are factors to be considered in determining voluntariness. However, in White, the confession of a 16-year-old who had been interro-

gated without counsel present for three hours was held to be voluntary. In <u>White</u>, this Court stated:

> "The age of a defendant minor, his education and his lack of previous experience with the law are also important factors to be considered in determining the voluntariness of a confession. The defendant here is 16 years old, is in the ninth grade and had no previous police record. However, these facts alone do not necessarily require the trial court to find the confession inadmissible." 146 Mont. at 234, 405 P.2d at 765-766.

In contrast with <u>White</u>, Graves was 20 years old with an eleventh grade education; however, there was also testimony that he was emotionally disturbed as a result of the stabbing and had consumed a large quantity of alcohol during the day and evening prior to the crime. Defendant had also been read his rights, had himself read them, appeared to understand the rights and signed a written waiver of his rights. No evidence was proffered which indicates that defendant was incapable of understanding the rights. Graves himself testified that at the time of the incident he was "kind of drunk" as opposed to "real drunk", and the written confession was signed nearly three and one-half hours later. There also was no evidence indicating coercion other than the atmosphere incidental to any arrest. In addition, Graves' production of the knife and initial inculpatory statements were spontaneous responses during his first contact with the officers. Under these circumstances, this argument is also lacking in merit.

Defendant also maintains that the knife should be suppressed as a result of a warrantless search and seizure without consent. In disposing of this issue, we point out that no search was involved. A police officer merely asked Graves if a knife was involved in the altercation whereupon defendant said "yes" and handed the knife to the police.

The defendant asserts that the District Court erred in refusing to accept his affidavit at the suppression hearing under State ex rel. Hansen v. District Court (1925), 72 Mont. 245, 233

P. 126. However, the District Court did not refuse to accept it. The court stated that it would consider the affidavit contingent upon defense counsel furnishing authority for its consideration. Whether the District Court accepted or rejected the affidavit is not apparent from the record, but the proper result was reached in either event. Having already considered defendant's contentions on the merits, we find that he has not sustained his burden of proof to suppress the evidence.

Defendant next contends that there is insufficient evidence to support the conviction of mitigated deliberate homicide. "On appeal we examine the evidence to determine whether the verdict is supported by substantial evidence. In so doing, we view the evidence in the light most favorable to the State. . . Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." State v. Merseal (1975), 167 Mont. 412, 415-416, 538 P.2d 1366, 1367-68; and cases cited therein. Viewing the evidence in this light, we find that there was sufficient evidence to support a conviction of mitigated deliberate homicide. The defendant confessed to the stabbing. He also testified "I said [to Craig Marlow], come outside and I'll bust your jaw." Another witness testified that a black man fitting the defendant's description and wearing a red shirt and white vest admitted after the stabbing, "I came out cutting. I cut him up. That's not like me." Other testimony reveals that the defendant was the only black man at Mister Lucky's and that he was wearing a red shirt and white vest. There was also testimony that the defendant was under no compulsion to fight the decedent, and he himself admitted that he could have returned to his seat at the bar after Craig Marlow's invitation to go outside. In short, the jury was presented with sufficient evidence to conclude that the defendant was guilty of mitigated deliberate homicide and that his use of deadly force was not justified.

- 9 -

Defendant next contends that the District Court's refusal to give his offered instruction on self-defense violates the Due Process Clause.

The following instructions were given by the District Court:

"Instruction No. 6

"To sustain the charge of deliberate homicide, the State must prove the following propositions:

"FIRST: That the defendant, Charles Henry Graves, caused the death of Craig Alan Marlow; and

"SECOND: That the defendant did so purposely or knowingly; and

"THIRD: That the defendant was not justified in using the force which he used.

"If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the defendant guilty.

"If, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you should find the defendant not guilty." (Emphasis added.)

"Instruction No. 7

"Criminal homicide is mitigated deliberate homicide when a homicide which would otherwise be deliberate homicide is committed under the influence of extreme mental or emotional stress for which there is reasonable explanation or excuse. The reasonableness of such explanation or excuse shall be determined from the viewpoint of a reasonable person in the actor's situation."

"Instruction No. 17

"A person is justified in the use of force or threat to use force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force. However, he is justified in the use of force likely to cause death or serious bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or serious bodily harm to himself or another or to prevent the commission of a forcible felony."

"Instruction No. 1 (in pertinent part)

- 10 -

"To this information the defendant has pleaded not guilty, and under that plea he denies every material allegation of the information against him, and in order to convict him of the crime charged against him every material fact necessary to constitute such crime must be proved by the State by competent evidence, beyond a reasonable doubt; and if the jury entertains any reasonable doubt upon any fact or element necessary to constitute the crime charged, it is your duty to give the defendant the benefit of such doubt and to acquit."

Defendant contends that the District Court erred in refusing the following proposed instruction:

"Defendant's Proposed Instruction No. 3

"You are instructed that the State must prove beyond a reasonable doubt that the defendant did not act in self-defense. If you find that the State has failed to prove beyond a reasonable doubt that the defendant did not act in self-defense, you must find the defendant not guilty. In other words, if you have a reasonable doubt whether or not the defendant acted in self-defense, your verdict must be not guilty."

This Court has been faced with numerous cases challenging self-defense instructions in recent years. As a result, Montana law in this regard has become well-settled. Section 45-3-102, MCA, defines "justifiable use of force," and section 45-3-115, MCA, provides that it is an affirmative defense. Since it is an affirmative defense, rather than an element of deliberate homicide or mitigated deliberate homicide, there is no constitutional prohibition against placing the burden of proof upon the defendant. Patterson v. New York (1977), 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281. However, "[t]he law in Montana is that although the burden of persuasion remains on the State, in order to avail himself of the affirmative defense of self-defense, the defendant has the burden of producing sufficient evidence on the issues to raise a reasonable doubt of his guilt." State v. Lopez (1980), ____Mont.____, 605 P.2d 178, 182, 37 St.Rep. 36, 41; State v. Cooper (1979), ____Mont.____, 589 P.2d 133, 136, 36 St.Rep. 30, 33; State v. Grady (1975), 166 Mont. 168, 175, 531 P.2d 681, 684. In State v. Azure (1979), ____Mont.____, 591 P.2d

- 11 -

1125, 1130, 36 St.Rep. 514, 518, we stated that an instruction stating the prosecution must prove the absence of justification beyond a reasonable doubt is a correct statement of the law.

Pursuant to this Montana law, in the context of the jury instructions given in the present case, it is obvious that the District Court erred. Instruction No. 6 includes the absence of justifiable use of force as an element of the crime of deliberate homicide; this is a misstatement of the law. Absence of justification is an affirmative defense which requires the defendant to produce sufficient evidence before it is placed in issue. Although we find that the District Court committed error in giving instruction No. 6, our discussion may not end here. We must determine if this error was prejudicial or merely harmless and whether the District Court erred in refusing to give defendant's proposed instruction No. 3.

In examining self-defense instructions this Court has repeatedly stated several principles which govern the review of challenged instructions. The instructions must be viewed as a whole to determine if they have limited the defense from fairly presenting his theory of defense. The District Court need not give repetitious instructions nor instruct on every nuance of a theory of defense. See State v. Bashor (1980), ____Mont.____, 614 P.2d 470, 484, 37 St. Rep. 1098, 1113; State v. Hamilton (1980), ____Mont.____, 605 P.2d 1121, 1129, 37 St.Rep. 70, 79; State v. Freeman (1979), ____Mont.____, 599 P.2d 368, 373, 36 St.Rep. 1622, 1628-29; State v. Azure, supra, 591 P.2d at 1130, 36 St.Rep. at 519; State v. Reiner (1978), ____Mont.____, 587 P.2d 950, 953-954, 35 St.Rep. 1861, 1864.

It must be noted that instruction No. 17 is a verbatim recitation of Montana's "justifiable use of force" statute, section 45-3-102, MCA. In Bashor, Freeman, Azure and Reiner, the same instruction was given along with omnibus instructions regarding the burden of proof and presumption of innocence. This

Court approved the instructions stating that the defendant could fairly present his theory of defense. _Azure_ specifically stated that a separate instruction on the burden of proof with regard to self-defense would be merely repetitive. In _Reiner_ it was stated that the District Court's failure to further explain defendant's burden of raising a reasonable doubt of guilt is not prejudicial, and that merely reciting section 45-3-102, MCA, is not so misleading as to justify a new trial. As we stated in _Reiner_:

> " . . . the test to be applied when error is predicated on a jury instruction is whether, when the instruction is considered as a part of the whole body of instructions, the instruction is prejudicial to the appealing party. State v. Caryl (1975), 168 Mont. 414, 430, 543 P.2d 389, 398, states the applicable rule:
>
> "'In determining the effect of given instructions, all instructions must be considered as a whole, and if they fairly tender the case to the jury, the fact that one instruction, standing alone, is not as full or accurate as it might have been is not reversible error.'" 587 P.2d at 953-954, 35 St.Rep. at 1864.

Defendant's proposed instruction No. 3 merely repeats instruction No. 6 and the previously quoted portion of instruction No. 1, which provides that the State must prove an absence of justification beyond a reasonable doubt. The only distinction between the defendant's proposed instruction and instruction No. 6 regarding the burden of proof is the use of the term "self-defense" as opposed to the use of "justified in using the force which he used." In this light, instruction No. 3 is purely repetitive and in no way prevents the defendant from fairly presenting his theory of defense.

Turning to the court's misstatement of law in instruction No. 6, we find the error harmless. No prejudice was suffered by the defendant; in fact the instruction as given was beneficial to his defense. Instead of instructing the jury that the defendant has the burden of producing sufficient evidence to put justifiable use of force in issue, the District Court in effect instructed the jury that self-defense was in issue and must be

- 13 -

proved by the State beyond a reasonable doubt. Thus, the District Judge in essence, made a finding of fact beneficial to the defendant which should have been made by the jury. Under no theory may this be considered reversible error.

Finally, the defendant asserts that prosecutorial misconduct prejudiced his presentation of the case and denied him a fair trial. The factual basis for this contention is a motion seeking the endorsement of five additional witnesses on the information. This motion was made by the prosecution on the first day of trial. In arguing the motion, the county attorney expressed a belief that the defendant was involved in a robbery at knife-point the evening before the trial and that the additional witnesses would be needed to show a continuing course of conduct. The court reserved ruling on the motion stating that it presented a question of relevancy and required a weighing of the probative value of the evidence against its prejudicial impact.

Defendant's contention is that the motion was not made by the county attorney in good faith and that defense counsel was forced to spend valuable time investigating the alleged robbery and to change defense tactics. However, if defense counsel did spend extensive time preparing to defend against this allegation his action was entirely premature. The court took the matter under advisement and the witnesses were never endorsed upon the information. Under these circumstances, there is no basis for finding reversible error in this context.

The judgment of conviction is affirmed.

_Frank J. Haswell_
Chief Justice

We concur:

_[signature]_

_John Conway Harrison_

- 14 -

---------------------------------

---------------------------------
Justices

Mr. Justice John C. Sheehy, specially concurring:

I concur in the result foregoing, because instruction no. 6 embodied the law of the case and denial of defendant's proposed instruction no. 3 merely avoided repetition in the instructions.

Assuming, however, that in the future, prosecutors will not offer instructions such as court's no. 6, which include as an element for the State to prove that the defendant was not justified in using the force which he used, it appears that some comment is necessary as to proper instructions in a so-called self-defense case.

First, I believe that merely instructing the jury, as was done in this case in instruction no. 17, in the language of the statute, section 45-3-102, MCA, respecting justified force gives the jury an abstract statement which is of little use in its determinations. In cases where the use of justified force is claimed by the defendant, the jury, at least where the evidence supports it, should be given an instruction that sets out the elements which are to be considered in determining whether the force was justified. These are: (1) the defendant must not be the aggressor; (2) the danger of harm to him must be a present one, not merely threatened at a future time, or without the present ability of carrying out a threat; (3) the force threatened must be unlawful--either criminal or tortious; (4) the person must actually believe that the danger exists, that is, use of force is necessary to avert the danger, and that the kind and amount of force which he uses is necessary; (5) his belief, in each of the aspects described, is reasonable even if it is mistaken. See, Criminal Law Commission Comment (M.C.C.

-16-

1973), section 94-3-102, R.C.M. 1947. Secondly, I believe that the jury should be instructed in a case where the defendant claims justification in the use of force that he has established his defense if he raises a reasonable doubt in the minds of the juries as to the proof by the State of the elements of the crime charged.

Thirdly, I believe the jury should further be instructed that if the defendant fails to meet his burden of persuasion by raising such reasonable doubt, it remains in any event, the duty of the State to prove the elements of the crime charged beyond a reasonable doubt.

There is a good deal of cloudy area in the instructions which we have been approving in homicide cases where justified force is claimed, not the least of which I pointed out in my dissent in State v. Bashor (1980), _____ Mont. _____, 614 P.2d 470, 37 St.Rep. 1098.

_____
                Justice

Mr. Justice Daniel J. Shea dissents and will file a written dissent later.

-17-