No. 86-211

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

_____

STATE OF MONTANA,

        Plaintiff and Respondent,

   -vs-

RAY MILHOAN,

        Defendant and Appellant.

_____

APPEAL FROM:  District Court of the Ninth Judicial District,
               In and for the County of Glacier,
               The Honorable R.D. McPhillips, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Moses Law Firm; Stephen C. Moses, Billings, Montana

    For Respondent:

        Mike Greely, Attorney General, Helena, Montana
        James M. Scheier, Asst. Atty. General, Helena
        James C. Nelson, County Attorney, Cut Bank, Montana

_____

Submitted on Briefs: Oct. 9, 1986

Decided: December 31, 1986

Filed:   DEC 31 1986

_____
                    Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Defendant Ray Milhoan appeals his conviction for two counts of felony theft and one count of misdemeanor theft following a jury trial in the District Court, Ninth Judicial District, Glacier County. We affirm his conviction.

The issues raised on appeal are:

1. Was there sufficient evidence to support the jury's findings that defendant acted purposely or knowingly in committing the offenses of felony and misdemeanor theft when he "exchanged" two motor vehicle engine blocks for others and the school district received nothing as a result of the trade?

2. Was there sufficient evidence to support the jury's findings that the value of the 427 engine block justified a felony theft conviction and the value of the 366 engine block justified a misdemeanor theft conviction.

3. Did the District Court properly deny defendant's motions to dismiss and motion for a directed verdict on the common scheme felony theft charge relating to the 18 transactions involving unauthorized use of school property?

4. Did the District Court err by giving State's jury instruction 12 defining knowingly and State's instruction 18 defining common scheme and by refusing to give defendant's offered instruction 6 on reasonable doubt, instruction 10 on conviction on conjecture, instruction 16 on the requisite mental state, instruction 29 defining larceny and instruction 31 defining taking?

In April, 1985, the Glacier County Attorney filed a seven count information against Ray Milhoan alleging a series

of felony thefts from 1980 to 1985. In October, 1985, the information was amended down to three counts of felony theft. Milhoan was convicted by a jury in November of two counts of felony theft and one count of misdemeanor theft. He was sentenced to four years for the felonies and six months for the misdemeanor. These sentences were suspended on the condition that defendant pay $300 in restitution and $550 in fines.

From July, 1980, until April, 1985, Milhoan was employed in three capacities. He was a minister at the First Baptist Church in Cutbank, he operated an automobile repair business called Milhoan Automotive, and he was employed by School District No. 15 in Cut Bank as the transportation supervisor. As transportation supervisor, Milhoan was responsible for maintenance of the school district buses. He had unlimited access to the school district bus repair shop, or "bus barn," and the Cut Bank High automotive shop. Milhoan used his own tools in his job as transportation supervisor because the school did not own the necessary equipment. Milhoan's convictions arise from his unauthorized use of the bus barn and appropriation of school district property.

The first felony conviction concerned Milhoan's unauthorized effort to trade a school district GMC 427 school bus engine to his friend and fellow church official, Midge Lorash. In exchange, Lorash was to give the school district a rebuildable Chevrolet GMC 350 engine. Not only was this "trade" made without the school superintendent's approval, but the school never received the Chevrolet engine. Nonetheless, the 427 school bus engine was rebuilt in the bus barn, and the school district was charged $72 for a water pump used in rebuilding it. Several people testified that

- 3 -

Milhoan told them the engine belonged to him. The school's auto mechanics and welding instructor testified that the "core" value (or trade-in value), of the engine before it was rebuilt was $350 to $400.

The second felony conviction involved another unauthorized trade--Milhoan agreed to swap a 366 Chevrolet school bus engine for the same type of engine in similar condition. However, the other party in the "trade" was unaware of any obligation to pay or give anything back to the school district. Accordingly, the school district did not receive an engine or anything of value. School authorities were unaware of their participation in this trade. The school's auto mechanics instructor testified that the engine was worth $350. The intended recipient of the engine believed the engine to be worth $75 to $100.

Milhoan argues that there was insufficient evidence to support the jury's finding that he possessed the requisite intent to be convicted of theft. He claims that he was authorized, as transportation supervisor, to trade vehicle parts belonging to the school district, and that there was no written policy prohibiting barter of parts. Further, he claims that there was no intent on his part to deprive the school of its property. Instead, he argued that it was his intent to provide the school with more usable property, as the school had no use for the traded engines.

"A person acts knowingly with respect to the result of conduct described by a statute defining an offense when he is aware that it is highly probable that such result will be caused by his conduct." Section 45-2-101(33), MCA. A person acts purposely "if it is his conscious object to engage in

- 4 -

that conduct or to cause that result." Section 45-2-101(58), MCA.

Milhoan claims that he arranged the trades motivated solely by good intentions. The jury, as the finders of fact, did not believe him. Milhoan's response is that there was insufficient evidence to support the jury's conclusion. Hence, we must address the issue of whether there was sufficient evidence to show that Milhoan purposely or knowingly exerted unauthorized control over the engine blocks and whether the evidence supported a finding that he had the purpose of depriving the school district of its property.

The test this Court uses to judge the sufficiency of the evidence is whether there is substantial evidence supporting the conviction when that evidence is viewed in the light most favorable to the State. State v. Austad (1982), 197 Mont. 70, 99, 641 P.2d 1373, 1389. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Id. The credibility and weight to be given to conflicting evidence is solely within the province of the jury. Id. State v. Harvey (1979), 184 Mont. 423, 428, 603 P.2d 661, 665.

A review of the evidence presented to the jury firmly establishes that the conviction was supported by the evidence. First, there is the testimony of the recipients of the trade that they did not know of their obligations to give the school district engine blocks in exchange for the bus engines they received. Second, these same recipients testified that they were under the impression that the blocks were Milhoan's. Third, Milhoan had twice been personally instructed by the Superintendent of Schools that it was against school policy to permit its equipment to be used by,

or loaned out to people who were not employees of the school. This instruction was communicated both orally and in writing. Fourth, Milhoan also knew that it was the school district's policy to auction unneeded equipment and supplies, and in fact, testimony revealed that Milhoan had participated in at least one school district surplus equipment auction. Finally, Milhoan charged the school district $72 for a water pump used to rebuild the 427 engine, a task completed in the school's bus barn, which was both against explicit school policy and for which the school was not compensated. Clearly, this evidence is sufficient to support the jury's finding that Milhoan acted with knowledge or purpose and without authority when he deprived the school district of the two school bus engines.

The next issue raised concerns the value of the engine blocks. Milhoan contends that there was insufficient evidence to support the jury's conclusion that the 427 engine's value justified a felony theft conviction and the value of the 366 engine justified a misdemeanor theft conviction.

Section 45-2-101(69), MCA, defines "value" as the market value of the property at the time and place of the crimes, or if such cost cannot be satisfactorily ascertained, the cost of replacement of the property within a reasonable time after the crime.

Milhoan argues that the State presented no evidence of the market value of the property at the time of the offense. He asserts that the only evidence regarding value was evidence about the "core value" of the engines. He maintains that this is a notable distinction, explaining that the core value is the trade-in value a dealer will discount on a new

item in exchange for the old part, where market value is the item's purchase price in the open market. Defendant's argument fails to create a notable distinction between the values. If core value is the value of a rebuildable engine normally determined by a commercial automotive engine rebuilder, and the market for a rebuildable engine is with an engine rebuilder, then core value is, by logic, identical to market value.

Defendant Milhoan asserts that the market value of both engine blocks was $50, citing the testimony given by Midge Lorach, recipient of the 427 bus engine. The State's witness, Mick Laden, the high school auto mechanics instructor, testified that the core value of the 427 engine was $350 to $400. Laden later testified that the value of the 366 engine was $350. Bill Barnard, the intended recipient of this engine, testified that the engine was worth $75 to $100.

It was solely within the province of the jury to weigh the testimony of each of the experts. Here, the jury weighed the credibility of the testimony of Milhoan's experts, against the State's expert. Milhoan's experts were the intended recipients of the school's property, and neither knew they had any obligation to repay the school. The State's expert was the high school auto mechanics instructor. The jury was more than fair in concluding that the theft of the 366 engine was a misdemeanor and the theft of the 427 engine block was a felony.

The second felony conviction, which was the third count in the information, was for a common scheme felony theft. Milhoan argues that the evidence was not sufficient to support his conviction of theft by common scheme, claiming

that the crimes were unrelated misdemeanors which the State bootstrapped into a felony charge. For these reasons, Milhoan motioned both for a dismissal and for a directed verdict on this charge. These motions were denied by the District Court. We affirm its action.

There were nineteen related incidents making up the common scheme. The incidents began in the fall of 1980, and continued through April, 1985, and all involved improper use of school district equipment and resources.

Milhoan argues that the evidence was insufficient to support his conviction of theft by common scheme. However, the record is replete with evidence of Milhoan's thefts from the school district. In the fall of 1980, Milhoan used school district paint and facilities to repaint the First Southern Baptist van. From August, 1980, to April, 1981, he helped himself to the school's janitorial cleaning supplies and a case of fluorescent light bulbs which he used at his church. When asked by church members how these items were purchased, Milhoan explained that he had the school district take the cost out of his paycheck. School authorities were unaware of this arrangement and never deducted any amount from Milhoan's check. In November, 1980, approximately five cases of tuna fish disappeared from the school's supply. Within the same period, the church had a supper for about 40 people at which the main course was tuna fish sandwiches. When Milhoan was asked by church members where he got the food he replied, "The Lord provides fish." Throughout 1980, Milhoan stocked the church's "poor pantry" with school district foodstuffs. One church member testified that he estimated there was $800 of school district food in the pantry. Milhoan denied that it was school district property,

though evidence indicating it was from any other source was never produced. Throughout the five year period Milhoan regularly fueled his personal and church vehicles with gasoline from the school district's pump. He apparently considered the gasoline a fringe benefit to which he was entitled because of the amount of his salary. He explained to one former church member that this was his arrangement with the school administrators. Use of the gas pumps was one of the subjects raised in an August, 1983, memo from the school superintendent to Milhoan explicitly prohibiting his use of the gas for non-school vehicles. In November, 1980, Milhoan borrowed (but never returned) 16 to 20 sheets of plywood from the school district when an addition was built onto his church. Around that time he also used the school's lumber and equipment to rebuild a friend's tow trailer.

From 1980 to 1985, Milhoan used school equipment and facilities to repair private automobiles for profit. During this period, he assisted in overhauling or completely rebuilding 5 non-school vehicles in the bus barn. In the interim he occupied himself with general repairs to several other private, non-school vehicles, including an Eddy's Bread delivery truck. He had two crankshafts reground at a transmission shop in Cut Bank and charged the $120 job to the school district although the crankshafts were for non-school vehicles. Finally, in 1985, he "borrowed" approximately $2,000 in school district tools and equipment, including four banquet tables and a 24 foot extension ladder.

Common scheme means "a series of acts or omissions motivated by a . . . common purpose or plan which results in the repeated commission of the same offense or affects the

same person or . . . persons or the property thereof." Section 45-2-101(7), MCA.

For 5 years, Milhoan appropriated goods and services from his employer. He was warned, both orally and in writing, that his activities were unauthorized and prohibited. He knew that what he was doing was totally unacceptable. In sum, the requirements of the common scheme statute were met: there was the repeated commission of the same offense, theft, affecting the school district's property, and the theft was motivated by a plan to use that property for personal gain. The trial court acted within its discretion when it denied Milhoan's motion for a directed verdict and refused his motion for dismissal. Substantial evidence supports the District Court's actions.

Milhoan also raises the issue of whether the State submitted sufficient evidence of value to prove the thefts involved in the common scheme warranted felony status. Both §§ 45-2-101(69)(c), and 45-6-301(6), MCA, provide that "amounts involved in thefts committed pursuant to a common scheme or the same transaction . . . may be aggregated in determining the value of the property." While this Court will not take judicial notice of the fact that the aggregate value of the personalty involved is greater than $300, it is clear in this case that the State produced sufficient uncontradicted evidence to establish this fact. Invoices, business records and direct testimony were presented at trial proving the value of the property taken in the common scheme was far in excess of $300. Milhoan's claim that the charges for his time be deducted is absurd and petty in light of the substantial evidence presented by the State. Therefore, we again affirm the District Court's rulings.

- 10 -

Finally, Milhoan claims the District Court erred by giving two of the State's proposed jury instructions and refusing to give five instructions offered by Milhoan.

Milhoan first challenges the court's instruction 17, which was the State's proposed instruction 12. This instruction was based on the statutory definition of "knowingly," § 45-2-101(33), MCA, although the exact statutory definition was not used, stating:

A person acts knowingly

(1) When he is aware of his conduct; or

(2) When he is aware under the circumstances, that his conduct constitutes a crime; or

(3) When he is aware there exists the high probability that his conduct will cause a specific result; or

(4) With respect to a specific fact when he is aware of a high probability of that fact's existence.

Milhoan's objection is that this instruction gave the jury four options to use in determining whether Milhoan acted knowingly. This, Milhoan argues, left the District Court in the dark as to the definition used by the jury to convict Milhoan. To support this objection, Milhoan cites State v. Ferrel (Mont. 1984), 679 P.2d 224, 41 St.Rep. 463, a case easily distinguishable as precedent. In Ferrel, the alternate definitions of the word "deprive" were used in an instruction. This Court ruled that the instruction should have been more focused because of the failure of the information to disclose the charges against Mrs. Ferrel. In the case against Milhoan it is clear that the amended information sufficiently detailed the charges against Milhoan. Hence this Court's concern in Ferrel is not a concern in this case. Further, we note that Milhoan's

argument is not logical in light of our holding in State v. Canon (Mont. 1984), 687 P.2d 705, 41 St.Rep. 1659.  In Canon, this Court rejected the argument that the jury should have been instructed to indicate which alternative mental state, purposely or knowingly, it relied on in convicting the defendant.  Milhoan's argument is merely a refinement of defendant's assertion in Canon.  The District Court's actions were proper in so instructing the jury.

Milhoan next maintains that the District Court erred by giving an instruction on common scheme, and further erred because the instruction was incomplete.  As to the first contention, Milhoan's activities were properly found by the District Court to have been within a common scheme, as discussed above.  As to the second, we note that the alleged "incomplete" instruction given by the District Court was in fact merely a statement of the common scheme statutory definition, § 45-2-101(7), MCA, and wonder at the lack of thought with which Milhoan's attorney prepared this argument.

Milhoan complains that his proposed instructions 29 and 31 were improperly refused by the District Court.  We hold that the District Court was correct in its refusal as Milhoan was advocating the use of incorrect statements of law. Milhoan's proposed instruction 29 was based on Montana's former larceny statute, § 94-2701, R.C.M. (1947), and was archaic in light of the current state of the law.  The trial court gave, without objection, instructions 15 and 16, which set forth the elements of theft to be proven by the prosecution.  Milhoan's proposed instruction 31 was an attempt to set out the mental state required for proof of the offense of theft.  However, the language of the proposed instruction is archaic, as the classic "taking" of property

was not carried over into the new criminal code. State v. McCartney (1978), 179 Mont. 49, 51-52, 585 P.2d 1321, 1323. Further, the District Court adequately instructed the jury on the required mental state in instructions 11, 13, 14, 17 and 18.

Defendant further argues that the court improperly denied his proposed instruction 16, stating that both act and mental state must be proven to convict the defendant. However, the court properly instructed the jury concerning the issue of act with accompanying intent in its instruction 11, stating "two essential elements in all criminal offenses are a voluntary act and a mental state." We find that Milhoan's instruction was cumulative and was properly denied.

Milhoan argues that the court improperly denied his proposed instruction 6, an archaic and improper statement on reasonable doubt. Milhoan's attorney cites the 1940 case of State v. Cassill (1924), 71 Mont. 274, 229 P. 716, to support his claim, apparently oblivious of State v. Lucero (Mont. 1984), 693 P.2d 511, 516, 41 St.Rep. 2509, 2515, where this Court disapproved an instruction similar to the one offered by Milhoan and adopted the language that was used by the District Court instructing Milhoan's jury.

Milhoan's final argument is that the District Court erred when it denied his proposed instruction 10, which he claims would have instructed the jury not to convict on the basis of suspicion or speculation. The District Court gave as its first instruction the following pertinent admonition:

> The function of the jury is to decide the issues of fact resulting from the charge or charges filed in this Court by the State and the defendant's plea of "not guilty" to those charges. This duty you should perform uninfluenced by passion or prejudice. You must not be biased against a defendant because he has been arrested for this

- 13 -

offense, or because charges have been filed against him, or because he has been brought before the Court to stand trial. None of these facts is evidence of his guilt, and <u>you</u> <u>are</u> <u>not</u> <u>permitted</u> <u>to</u> <u>infer</u> <u>or</u> <u>to</u> <u>speculate</u> from any or all of them that he is more likely to be guilty than innocent.

You are to be governed solely by the evidence introduced in this trial and the law as stated to you by me. <u>The</u> <u>law</u> <u>forbids</u> <u>you</u> <u>to</u> <u>be</u> <u>governed</u> <u>by</u> <u>mere</u> <u>sentiment</u>, <u>conjecture</u>, <u>sympathy</u>, <u>passion</u>, <u>prejudice</u>, <u>public</u> <u>opinion</u> <u>or</u> <u>public</u> <u>feeling</u>. Both the State and the defendant have a right to demand, and they do demand and expect, that you will act conscientiously and dispassionately in considering and weighing the evidence and applying the law of the case. (Emphasis added.)

This instruction was given without objection. Milhoan's proposed instruction 10 was repetitive and hence unnecessary.

For the reasons stated herein, defendant Milhoan's conviction is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices