No. 87-474

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

---

STATE OF MONTANA,

        Plaintiff and Respondent,

-vs-

JOHN RONALD PRICE,

        Defendant and Appellant.

---

APPEAL FROM: District Court of the Sixth Judicial District,
In and for the County of Park,
The Honorable Byron Robb, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        William Frazier, Big Timber, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
        George Schunk, Asst. Atty. General, Helena
        William Nels Swandal, County Attorney, Livingston,
        Montana; Dan McGregor, Deputy County Attorney

---

Submitted on Briefs: Aug. 18, 1988

Decided: September 27, 1988

Filed: SEP 2 7 1988

*Ethel M. Harrison*

---

Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Defendant John Ronald Price appeals from judgment of conviction on two counts of burglary entered by the District Court of the Sixth Judicial District, Park County, Montana. We affirm.

On April 10, 1987, Livingston Police responded to a report of a break-in at the Grace Methodist Church. The rear door of the church had been forcibly entered and the kitchen ransacked, but no perpetrator was discovered. Later that evening, a police officer noticed lights on inside the church. On closer investigation, the officer sighted two men and one women in the basement of the church. The officer recognized one of the men as the defendant John Price, whom he had met previously. He also believed the woman was Maryann Burroughs, the stepdaughter of the defendant. The third individual, Cliff Miller, was arrested as he exited the rear door of the building. The other two accomplices ran back through the church and made their escape.

After Miller was taken into custody, an investigation revealed Price's automobile parked across the street from the church with its passenger door open and a purse located on the front seat. A bank account book in the names of Maryann Burroughs and Cliff Miller was found inside the purse.

At approximately 3:00 o'clock that morning, officers went to the home of the defendant. Though they were unable to locate him, officers sighted through a window of the defendant's house a glass punch bowl partially covered by purple cloth. The officers next secured an arrest warrant for the defendant. Price was located and arrested later that

2

morning at the residence of Cliff Miller and Maryann Burroughs. Price was charged with burglary of the Grace Methodist Church. Maryann Burroughs was also later arrested and charged with burglary of the Grace Methodist Church. Both Miller and Burroughs pled guilty to burglary charges.

Price later gave his consent to a search of his residence. Although the search of the house revealed nothing incriminating, the officers found in the back yard next to the defendant's house a broken glass punch bowl, two purple choir robes and numerous pre-stamped, pre-addressed envelopes belonging to the First Baptist Church. Additionally, a gold and white choir collar was found in the street across from the defendant's home. Shortly after this investigation, the First Baptist Church reported a burglary which they believed occurred on the previous evening. Missing were two purple choir robes, a choir collar, two or three hundred of the church's pre-stamped, pre-addressed envelopes and other items which were never recovered. Price was then charged with the burglary of the First Baptist Church.

At trial, Miller testified that he had seen a collar and a box of white envelopes inside the defendant's home on the night the three entered the Grace Baptist Church. Both Miller and Burroughs testified that Price was with them in the Grace Baptist Church. Price denied ever being in either church. The jury found Price guilty of burglarizing both churches.

The appellant raises four issues for review:

1. Did the State present substantial credible evidence to support the verdict with respect to the burglary of the First Baptist Church?

3

2. Did the District Court err in not giving appellant's proposed instruction regarding the credibility of witness identification testimony.

3. Was the testimony of the accomplices that they had previously pled guilty to charges arising out of the incident with which appellant was charged unduly prejudicial?

4. Were the comments by the prosecuting attorney relating to appellant's post-arrest silence unduly prejudicial and violative of his Fifth Amendment rights?

Issue No. 1. Did the State present substantial credible evidence to support the verdict with respect to the burglary of the First Baptist Church?

Section 45-6-204(1), MCA, provides:

> A person commits the offense of burglary if he knowingly enters or remains unlawfully in an occupied structure with the purpose to commit an offense therein.

In reviewing the jury's verdict in a criminal matter when it is alleged the evidence is insufficient to support the verdict, our function is to determine if the verdict is supported by substantial evidence. We will not disturb a verdict which is based upon substantial evidence. State v. Pepperling (1974), 166 Mont. 293, 300, 533 P.2d 283, 287; State v. Bouldin (1969), 153 Mont. 276, 284, 456 P.2d 830, 834-35.

As we recognized in State v. Wilson (Mont. 1981), 631 P.2d 1273, 1278-79, 38 St.Rep. 1040, 1047, the proper test upon review is that articulated in Jackson v. Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573:

> [T]he relevant question is whether, after viewing the evidence in the light most

4

> favorable to the prosecution, <u>any</u> <u>rational</u> <u>trier</u> of fact could have found the essential elements of the crime beyond a reasonable doubt. (Emphasis in original.)

We added further that "substantial evidence" is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, citing State v. Graves (Mont. 1981), 622 P.2d 203, 208, 38 St.Rep. 9, 14; and State v. Merseal (1975), 167 Mont. 412, 416, 538 P.2d 1366, 1368.

Appellant argues the evidence is insufficient because the State only presented accomplice testimony linking the appellant with the collars and the envelopes. In support of this argument he cites § 46-16-213, MCA, which mandates that accomplice testimony be corroborated by independent evidence which tends to connect the appellant with the crime charged.

Appellant correctly argues that, to be sufficient, the corroboration must do more than show the crime was committed or the circumstances of its commission. It must raise more than a suspicion of the defendant's involvement in, or opportunity to commit the crime charged. However, this Court will not dissect the facts in order to weigh them for review. Corroborative evidence need not be sufficient, by itself, to support a defendant's conviction or even make out a prima facie case against him. In addition, the independent evidence need not extend to every fact to which the accomplice testifies. State v. Manthie (1982), 197 Mont. 56, 61-62, 641 P.2d 454, 457, citing State v. Rose (1980), 187 Mont. 74, 80, 608 P.2d 1074, 1077-78; State v. Owens (1979), 182 Mont. 338, 344, 597 P.2d 72, 75-76; State v. Williams (1979), 185 Mont. 140, 151, 604 P.2d 1224, 1230.

The evidence presented at trial, examined and judged by the jury for its credibility, was sufficient to connect the

appellant with the burglary of the First Baptist Church. In addition to the testimony of Miller that the collar and envelopes were in the appellant's home on the evening of the burglaries, the police officers saw a punch bowl covered by purple cloth in the appellant's home. Discovered in the yard adjacent to the appellant's home were the stolen envelopes and choir robes, and a punch bowl. Across the street from the appellant's home the police discovered the stolen choir collar.

The resolution of factual matters is for the jury, and if there is substantial evidence to support the judgment, this Court must affirm the decision. State v. Gladue (1984), 209 Mont. 235, 239, 679 P.2d 1256, 1258; State v. Graham (1983), 206 Mont. 49, 54, 669 P.2d 691, 694. Viewing the evidence in its totality, we find there is substantial evidence upon which a rational jury could have found appellant guilty.

Issue No. 2.

Did the District Court err in not giving appellant's proposed instruction regarding the credibility of witness identification testimony.

Appellant argues it was error for the District Court to refuse to give his proposed jury instruction regarding the credibility of witness identification testimony. The proposed instruction reads in part as follows:

> Identification testimony is an expression of belief or impression by the witness. Its value depends on the opportunity the witness had to observe the offender at the time of the offense and to make a reliable identification later.

6

It advised the jury to consider the capacity, opportunity, recollection and credibility of the witness. Additionally, it emphasized the burden of proof on the state to prove every element of the crime, which "specifically includes the burden of providing beyond a reasonable doubt the identity of the defendant. . . "

Appellant relies on State v. Hart (Mont. 1981), 625 P.2d 21, 31, 38 St.Rep. 133, 144, where we noted:

> Such an instruction may be proper, if not mandatory, in certain cases. The necessity of this type of instruction is especially clear when there is only a single eyewitness's unsubstantiated testimony which identifies the offender. (Citation omitted.)

Although the eyewitness identification by Officer Walls was buttressed by the circumstantial evidence and the testimony of Miller and Burroughs, appellant suggests the nature of this corroborating evidence rendered the eyewitness testimony "essentially unsubstantiated," thus necessitating the proposed instruction. We disagree. Neither § 46-16-213, MCA, nor our statement in Hart requires evidence be severed and weighed independently. Contrary to appellant's suggestion, corroborating evidence need not be corroborated.

Although we question the sufficiency of the defense counsel's objection at the time of the instruction's refusal, we believe the judge properly held the jury was adequately instructed. The State's proposed instruction, given as Instruction #2, adequately advised the jury regarding the credibility of the witnesses, with specific instructions that they may consider a witness's appearance, candor, intelligence, knowledge of the subject, relation to the state or defendant, the support or contradiction of other evidence, the witness's capacity to perceive, recall or communicate,

7

and the witness's character for truthfulness. Additionally, Instruction #5 advised the jury of the elements of the crime charged and required them to find the defendant not guilty if any of the elements were not proven beyond a reasonable doubt. Counsel for appellant made no objection to either of these instructions. It is not error to refuse a proposed instruction which is repetitive. State v. Milhoan (Mont. 1986), 730 P.2d 1170, 1176, 43 St.Rep. 2371, 2379.

Issue No. 3.

Was the testimony of the accomplices that they had previously pled guilty to charges arising out of the incident with which appellant was charged unduly prejudicial?

We hold under the facts of this case, the appellant was not unduly prejudiced. Although appellant failed to raise the issue at trial and is procedurally barred for failing to do so, at issue is his misplaced reliance on United States v. Griffin (11th Cir. 1985), 778 F.2d 707. In Griffin, the trial judge read a codefendant's indictment to the jury in a conspiracy trial, and told the jury that this codefendant had been adjudicated guilty. The reviewing court reversed the conviction, noting such testimony was prejudicial. In this case, there is an important distinction to be made with Griffin. Here, appellant's accomplices took the stand and testified, thereby putting their credibility at issue. Such testimony comes as an exception to the general principle that evidence of a codefendant's guilty plea is inadmissible. As noted in Griffin, "where a codefendant takes the witness stand, evidence of a guilty plea may be introduced to aid the jury in assessing the codefendant's credibility." Griffin, 778 F.2d at 710, n. 5. See also, U.S. v. Baez (10th Cir. 1983), 703 F.2d 453, 455; and U.S. v. Wiesle (8th Cir. 1976),

8

542 F.2d 61, 62. This reasoning was also adroitly developed in U.S. v. Halbert (9th Cir. 1981), 640 F.2d 1000, 1005, where the court held:

> As a result of plea bargaining, it is often the prosecution which produces a codefendant and elicits testimony tending to show the substantive guilt of the defendant. This is, of course, admissible. As a part of that testimony, the trier of fact should know the witness' total connection to the defendant or to the event; . . . [A] question about the guilty plea is legitimate as the purpose is to support the reasonableness of the witness' claim to firsthand knowledge because of admitted participation in the very conduct which is relevant.

The Halbert court also noted the use of such testimony by the defense:

> [T]he defense may, and often does, bring this fact out on cross examination . . . [and] may suggest that the witness, like Judas, is a perfidious erstwhile associate bent upon delivering the defendant into the hands of the prosecution. Or perhaps the defense may dwell on the benefits the witness expects to receive by favorable testimony and upon the motive and need for the witness to make good on his bargain with the prosecution.

Halbert, 640 F.2d at 1004-05. While it is not clear why the prosecution brought this information out, we note that the defense attorney fully used the statements for exactly these purposes. In view of this, we find no error.

Issue No. 4.

9

Were the comments by the prosecuting attorney relating to appellant's post-arrest silence unduly prejudicial and violative of his Fifth Amendment rights?

The final issue is directed to the prosecutor's statements relating to appellant's post-arrest silence. The deputy county attorney in his closing argument made the following comments on the post-arrest and pretrial position of appellant:

> What's more, we have got no statement. Since April this innocent man, according to his own words, has made no statement to the police to try and establish that he is innocent and avoid the necessity of a court action.
>
> . . .
>
> Once again, no statement about this burglary either. Now, we can't force people to come in, but what's the natural thing? You go, I didn't do it, and here is why. Well, we didn't get that from the defendant.
>
> . . .

Were it not for the overwhelming evidence of the appellant's guilt, this case might well have been reversed. This Court has noted in a number of recent cases the impropriety of such comments, the latest being State v. Johnson (Mont. 1988), _____ P.2d _____, 45 St.Rep. 1653. Therein, Mr. Justice Weber carefully set forth the views of this Court concerning comments by prosecutors in view of the United States Supreme Court's holding in Griffin v. California (1965), 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106; and Chapman v. California (1967), 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705. In addition, he noted a number of recent opinions of this Court following the dictates of Griffin. Prosecutors should

10

carefully note this Court's abhorance of such trial tactics. The evidence in every case is not so overwhelming that the comments will be harmless beyond a reasonable doubt. Given the strength of the State's case, there was no need for these comments.

We affirm the conviction.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices