No. 95-086

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

STATE OF MONTANA,

       Plaintiff and Respondent,

v.

ELLEN ARTHUN and BRUCE ARTHUN,

       Defendants and Appellants.

**FILED**

NOV 2 1 1995

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA


APPEAL FROM: District Court of the Sixth Judicial District,
In and for the County of Park,
The Honorable Byron L. Robb, Judge presiding.


COUNSEL OF RECORD:

    For Appellant:

        Larry Jent, Williams, Jent & Dockins,
        Bozeman, Montana

    For Respondent:

        Hon. Joseph P. Mazurek, Attorney General,
        John A. Paulson, Assistant Attorney General,
        Helena, Montana

        Robert W. Brown, Special Deputy Park County
        Attorney, Montana Law Enforcement Academy,
        Bozeman, Montana


Submitted on Briefs: September 21, 1995

Decided: November 21, 1995

Filed:

_____
Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Defendants Ellen and Bruce Arthun were charged by information with possession of drug paraphernalia and criminal possession of dangerous drugs. After a nonjury trial in the District Court for the Sixth Judicial District in Park County, the Arthuns were found guilty of all charges. The Arthuns appeal the District Court's denial of their motion to suppress evidence and the court's verdict. We affirm the order and judgment of the District Court.

There are three issues on appeal:

1. Did the District Court err when it denied the Arthuns' motion to suppress the package of marijuana?

2. Was there sufficient evidence to convict both defendants of felony criminal possession of dangerous drugs?

3. Was there sufficient evidence to convict Bruce Arthun of misdemeanor possession of drug paraphernalia?

## FACTUAL BACKGROUND

On May 25, 1993, Mike Bracket, a police officer in Louisville, Kentucky, contacted Park County Deputy Sheriff, Henry Tashjian, and informed him that the United Parcel Service (UPS) transport hub in Louisville had inspected a package addressed to Ellen Arthun in Park County, Montana, and had discovered what appeared to be a sizeable amount of marijuana. The marijuana had been shipped in a motor oil box from Tucson, Arizona, and was addressed to Ellen at the Arthuns' rural home located on U.S. Highway 89 between Wilsall and Clyde Park.

2

Officer Tashjian arranged for the box to be sent to the Livingston Police Department. When the package arrived the next day, the officers tested the contents and resealed it for delivery to the Arthuns' residence.

Livingston Police Officer Gerald Cox, disguised as a UPS delivery man, made the delivery on May 26, 1993, at about 3:45 p.m. Ellen Arthun came to the door and accepted the package. She expressed no surprise at its delivery, and neither Ellen nor Bruce did anything to return or disclaim it.

Officer Tashjian and other local law enforcement personnel set up surveillance points near the Arthuns' home and observed the area through binoculars for several hours after the delivery of the package. They saw Bruce and his young stepson leave the residence and drive to an unlocked farm shed located about 400 yards away on the other side of U.S. Highway 89. Bruce entered the shed for a short time, then drove one mile to his parents' ranch home. That afternoon, Bruce and his stepson also went gopher hunting and drove to a store in Wilsall before they returned home. The officers' surveillance was obstructed at times during their surveillance, and they did not see Bruce take the box out of his home.

Following the surveillance, Officer Tashjian obtained a search warrant for the Arthuns' residence and served it at 8:39 p.m. Officer Tashjian walked up to the Arthuns' home and spoke with Ellen and Bruce. He explained the reason for the search, told them about the officers' involvement in the UPS delivery, and had them

3

wait on the living room couch while the search was conducted. The Arthuns were not handcuffed during the search.

During the search, the officers found a baggie of marijuana, some Zig Zag rolling papers, and a marijuana pipe in the kitchen cupboards. They also found another marijuana pipe, a "roach" clip used for holding marijuana cigarettes, and numerous partially burned marijuana cigarettes in two glass bowls on the kitchen counter. In Ellen's purse, located on the kitchen counter, the officers found more Zig Zag papers, some marijuana, and a variety of pills for which Ellen had no prescription. Also in Ellen's purse were several UPS receipts for shipments to Tucson, Arizona. However, the officers did not find the UPS box in the house.

Following the search, Officer Tashjian placed the Arthuns under arrest. They were advised of their rights outside the presence of their two children and were placed in separate patrol cars. Officer Tashjian then asked Bruce Arthun where the UPS package was located. At first Bruce replied, "What box?" Officer Tashjian again explained that the officers had conducted and observed the controlled delivery of the box and had watched Bruce's movements after the delivery, including his trips to the farm shed and his parents' house. Officer Tashjian told Bruce he could get a search warrant for the shed and Bruce's parents' house if necessary. Bruce did not state where the box was located, but said he would show the officers. He directed two of the officers to the farm shed located 400 yards away on the other side of the highway,

4

entered the shed with them, and pointed out where the box was concealed behind some old boards and farm supplies. The officers retrieved the box, which had not been opened.

The items retrieved from the Arthuns' home and from Ellen's purse were tested at the Montana Crime Lab, and were found to be dangerous drugs of different types (marijuana, oxycodene, alprazolan, and morphine). Tests of the contents of the UPS package discovered in the shed disclosed 3.96 pounds of marijuana, a controlled substance. On the basis of these tests, both Ellen and Bruce were charged with criminal possession of drug paraphernalia and criminal possession of dangerous drugs.

On November 15, 1993, the Arthuns filed a motion to suppress the UPS package on the basis that it was the product of a warrantless search to which they had not consented. The District Court denied that motion and found that there was a search of the farm shed, but that Bruce consented to it, and that neither Bruce nor Ellen had standing to complain of a warrantless search of the structure. Following a nonjury trial, Bruce was convicted of criminal possession of drug paraphernalia and one count of criminal possession of dangerous drugs. Ellen was convicted of four counts of criminal possession of dangerous drugs and one count of criminal possession of drug paraphernalia.

## ISSUE 1

Did the District Court err when it denied the Arthuns' motion to suppress the package of marijuana?

5

We review a district court's denial of a motion to suppress to determine whether the court's findings of fact are clearly erroneous, and whether those findings were correctly applied as a matter of law. *State v. Williams* (Mont. 1995), 52 St. Rep. 1085, 1086 (citing *State v. Flack* (1993), 260 Mont. 181, 188, 860 P.2d 89, 94).

In this case, the facts are undisputed. Both parties agree that, based on the evidence seized during a lawful search of the Arthuns' home, Officer Tashjian arrested Bruce and Ellen and advised them of their rights pursuant to *Miranda v. Arizona* (1966), 384 U.S. 436. Both parties further agree that later, after the UPS package was not discovered in the Arthuns' home, Officer Tashjian told Bruce that he could get a search warrant for the shed and Bruce's parents' house. Finally, the parties agree that Bruce responded to the request for evidence by taking two officers to the farm shed and specifically directing them to the location of the package.

Based on the foregoing facts, the District Court denied the Arthuns' motion to suppress. The court held that there was a search of the farm shed, but that Bruce had consented to it, and that neither Bruce nor Ellen had standing to challenge a warrantless search of the structure. Although we disagree that the Arthuns lacked standing (*see State v. Bullock* (1995), 901 P.2d 61, 52 St. Rep. 717), it is well established that this Court will uphold the district court's result, if correct, even though arrived at for the wrong reason. *Hagan v. State* (1994), 265 Mont. 31, 35, 873 P.2d 1385,

6

1387.  Therefore, we hold that the District Court correctly denied the Arthuns' motion to suppress because there was no search of the shed which could have violated the Fourth Amendment of the United States Constitution, or Article II, Section 11, of the Montana Constitution.

The issue of whether the discovery of the UPS box constituted a "search" in violation of the Fourth Amendment was raised and briefed at the district court level.  In response to the Arthuns' motion to suppress, the prosecutor argued that the box had not been recovered by means of a search and seizure under either the Fourth Amendment, or Article II, Section 11, since Bruce had essentially handed over the box of marijuana and no search had been conducted. At both the district court level and on appeal, the State cited *State v. Graves* (1981), 191 Mont. 81, 622 P.2d 203, for the proposition that a defendant's delivery of a piece of evidence does not constitute a search.

In *Graves*, the defendant was involved in a bar fight in which he stabbed another bar patron.  A police officer later approached the defendant and asked him if he had been involved in the altercation.  The defendant answered that he had.  When the officer asked him if a knife had been involved, the defendant said "yes" and turned the knife over to the police.  The defendant later maintained that the knife should be suppressed as a result of a nonconsensual warrantless search and seizure.  This Court held that

7

no search was involved because the defendant handed the evidence over to the police. *Graves*, 622 P.2d at 208.

We agree that the *Graves* holding applies to this case. The record is clear that the officers did not conduct an independent inspection of the farm shed, but rather entered it at Bruce's invitation and retrieved the box which Bruce located for them. This Court has previously stated that:

> A 'search' is a prying into hidden places for that which is concealed. . . .
>
> The distinctive factor that turns an observation into a search, in the constitutional sense, is whether the person making the observation has a right to be in the place where the observation is made.

*State v. Carlson* (1982), 198 Mont. 113, 118-19, 644 P.2d 498, 501.

We conclude that under the facts of this case, the officers were invited into and had a right to be in the farm shed where the package was located. We further conclude that there was no prying or investigation, and thus no "search" so as to implicate either the Fourth Amendment or the Montana Constitution.

Since Bruce was in police custody when he directed the officers to the UPS package, and since there was no "search" pursuant to the Fourth Amendment, the proper inquiry should have been whether Bruce's statement to the police was voluntary. Although Bruce did not raise the issue of his Fifth Amendment rights at either the district court level or on appeal, we find ample evidence in the record to support a conclusion that Bruce's disclosure of the evidence was voluntary. Bruce had been read his

8

*Miranda* rights and had failed to invoke either his right to remain silent or his right to an attorney. His statement to Officer Tashjian was clearly made of his own free will, without duress. As the District Court noted, "[t]he totality of the circumstances indicate Bruce acted voluntarily, and there was no violation or abuse of defendants' constitutional or statutory rights."

Therefore, we affirm the District Court's denial of the Arthuns' motion to suppress the package of marijuana found in the shed on the property belonging to Bruce's parents.

## ISSUE 2

Was there sufficient evidence to convict both defendants of felony criminal possession of dangerous drugs?

We review the sufficiency of evidence to determine "'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Arlington* (1994), 265 Mont. 127, 146, 875 P.2d 307, 318 (quoting *State v. Cyr* (1987), 229 Mont. 337, 339, 746 P.2d 120, 122).

Bruce and Ellen claim that the evidence failed to show that they had "knowing" possession of the UPS package. The Arthuns maintain that mere possession of the unopened package which was addressed to Ellen is not enough to establish their knowledge of its contents.

Section 45-9-102, MCA, requires proof that a defendant possessed dangerous drugs. "Possession" is defined as "the <u>knowing</u>

9

<u>control</u> of anything for a sufficient time to be able to terminate control." Section 45-2-101(52), MCA (1993) (emphasis added). Section 45-2-101(33), MCA (1993), provides that a person acts knowingly with respect to a circumstance described in a statute "when the person is aware of the person's own conduct or . . . that the circumstance exists."

Although "knowing control" cannot be inferred from mere possession alone, this Court has held that knowledge of the contents of a package may be proven by direct evidence or any evidence of acts, declarations, or conduct of the accused from which the trier of fact may infer knowledge. *State v. Hall* (1991), 249 Mont. 366, 371, 816 P.2d 438, 441. *See also* § 45-2-103(3), MCA ("[t]he existence of a mental state may be inferred from the acts of the accused and the facts and circumstances connected with the offense.").

The Arthuns claim that there is no evidence that Ellen had any knowledge of the contents of the box, and that Bruce's knowledge cannot be presumed from his knowledge of the location of the box. We hold, however, that there was sufficient evidence from which the District Court could have inferred that both Bruce and Ellen had knowledge of the contents of the package. Ellen accepted the package without question or surprise, and both Bruce and Ellen kept the package without attempting to return or disclaim it. Bruce took the package to a farm shed within hours of its delivery and concealed it behind a pile of farm tools. Although Bruce feigned

10

ignorance when questioned about the box's location, he later directed two officers to its exact location in the shed. The officers conducting a search of the Arthuns' home found other marijuana and paraphernalia in easily accessible places. Ellen had several UPS receipts in her purse for items sent to Tucson, Arizona, the place from which the package of marijuana had been sent.

We acknowledge that mere delivery is not enough to establish knowing control. *State v. Smith* (1983), 203 Mont. 346, 350, 661 P.2d 463, 465. We hold, however, that delivery combined with other suspicious circumstances--in this case, the drugs and other paraphernalia found in the Arthuns' home, the receipts found in Ellen's purse, and Bruce's attempt to conceal the package--is sufficient evidence from which a trier of fact could infer knowing possession. Accordingly, we hold that there was sufficient evidence to support the District Court's conviction of Bruce and Ellen Arthun for felony criminal possession of dangerous drugs. Their convictions are, therefore, affirmed.

ISSUE 3

Was there sufficient evidence to convict Bruce Arthun of misdemeanor possession of drug paraphernalia?

Bruce contends that the evidence was insufficient to support his conviction for criminal possession of drug paraphernalia, pursuant to § 45-10-103, MCA. Section 45-10-103, MCA, requires proof that the defendant (1) possessed the drug paraphernalia, and

11

(2) intended to use it. Bruce asserts no reasonable inference can be made that he possessed or intended to use the paraphernalia found in the kitchen area of the Arthuns' home.

This Court has, however, upheld convictions where drugs have been found in joint or common areas of a residence. *State v. Scheffelman* (1987), 225 Mont. 408, 413, 733 P.2d 348, 351. We have, in fact, held that "[w]here a controlled substance is found in a place subject to the joint dominion and control of two persons, possession may be imputed to either or both persons." *State v. Hall* (1991), 249 Mont. 366, 371, 816 P.2d 438, 441. In this case, the Arthuns' kitchen, where the paraphernalia was found, was unlocked and openly accessible to anyone in the house. We conclude, therefore, that there was sufficient evidence to support the District Court's finding that Bruce had constructive possession of the paraphernalia.

The second element of "intent to use" is more difficult to prove. Because there is rarely direct proof, intent must be inferred from the acts of the accused and the facts and circumstances of the offense. *Hall*, 816 P.2d at 441. In this case, the police found marijuana, two marijuana pipes, and two glass bowls of marijuana "roaches." From this evidence, the District Court could have properly inferred that the marijuana was being consumed by two users. In addition, Bruce was also convicted of the related crime of felony possession of a UPS package of marijuana, which he had knowingly concealed in a farm shed.

12

Although Bruce submitted to a post-arrest drug test which did not indicate the presence of any THC, the active ingredient in marijuana, the test was performed approximately one week after Bruce's arrest and the District Court noted that Bruce did not submit any evidence of how long THC is detectable after the use of marijuana.

This Court has stated that "[w]hen circumstantial evidence is susceptible to two interpretations, one which supports guilt and the other which supports innocence, the trier of fact determines which is most reasonable." *State v. Bernhardt* (1991), 249 Mont. 30, 32, 813 P.2d 436, 437. We hold that the presence of the drugs and paraphernalia in the Arthuns' kitchen, combined with Bruce's connection to the box of marijuana, would have been sufficient to infer that Bruce possessed the paraphernalia with the intent to use it. We conclude there was sufficient evidence to support Bruce's conviction of possession of drug paraphernalia.

Based on the foregoing analysis, we affirm the District Court's denial of the Arthuns' motion to suppress, and affirm the convictions of Bruce and Ellen Arthun for possession of dangerous drugs, and Bruce Arthun's conviction for possession of paraphernalia.

_____
Justice

13

We concur:

_____
Chief Justice

_____

_____

_____
Justices

14