No. 05-370

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 120

STATE OF MONTANA,

       Plaintiff and Respondent,

   v.

KERRY ANN SCHWARZ,

       Defendant and Appellant.

APPEAL FROM:    The District Court of the Twentieth Judicial District,
In and For the County of Sanders, Cause No. DC-04-11,
Honorable Deborah Kim Christopher, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

          Carolyn Gill, Gill Law Office, Plains, Montana

       For Respondent:

          Honorable Mike McGrath, Attorney General; C. Mark Fowler,
Assistant Attorney General; Helena, Montana

          Robert Zimmerman, County Attorney, Thompson Falls, Montana

Submitted on Briefs: April 5, 2006

Decided: May 31, 2006

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1    Kerry Ann Schwarz pled guilty in the Twentieth Judicial District Court to criminal possession of dangerous drugs, a felony in violation of § 45-9-102, MCA. The dispositive issue on appeal is whether the District Court correctly determined that law enforcement had legal authority to search Schwarz's home after her thirteen-year-old daughter provided the officers permission to enter when Schwarz was not home?

¶2    We reverse.

## BACKGROUND

¶3    On February 27, 2004, Sanders County Deputy Sheriff Joe Brown enlisted the assistance of Thompson Falls City Police Officer Chris Nichols in arresting Jonathan Lowe. After Officer Nichols learned that Lowe was staying at the defendant's residence in Thompson Falls, the two officers, along with Reserve Deputy Bronner, drove to Schwarz's home to effect an arrest. Brittany Glazier, Schwarz's thirteen-year-old daughter, who had just arrived home from the movies with two girlfriends, answered the door. The three friends had been watching a video while waiting for one girl's ride home; the other friend had permission to spend the night at Brittany's house. Brittany testified that she did not recognize either of the officers, although, apparently she had met Officer Brown at a Girl Scout event. Officer Brown explained to Brittany, whom he believed to be either thirteen or fourteen years old, that he was looking for Lowe. The record is in dispute as to whether Brittany invited the officers to search the home, or whether the officers directly asked permission to enter. Either way, the officers entered

2

with Brittany's consent. No one made an effort to contact Schwarz; nor did law enforcement obtain a search warrant.

¶4 During the course of the search, Officer Nichols discovered a marijuana pipe and a small plastic container containing a white substance, later determined to be methamphetamine. At some point, Schwarz, who was out bowling, called home and learned of the officers' presence. She immediately drove home. Upon Schwarz's arrival, Officer Nichols indicated that he had discovered drugs. Schwarz admitted to owning the pipe and marijuana and provided written consent to another search of the entire house. Officer Nichols arrested Schwarz and drove her to the police station, obtaining further admissions from Schwarz along the way.

¶5 Schwarz filed a motion to suppress the evidence and statements obtained by the officers, arguing that law enforcement illegally searched her home in violation of Article II, Sections 10 and 11 of the Montana Constitution. After hearing testimony on the motion, the District Court denied it, noting that because Brittany and her friend were home alone on a Friday night, "all the parents had confidence in these girls to exercise good judgment." Schwarz entered a conditional plea preserving her right to appeal the suppression issue.

## STANDARD OF REVIEW

¶6 The standard of review of a district court's denial of a motion to suppress is whether the court's findings of fact are clearly erroneous and whether those findings were

correctly applied as a matter of law. *State v. McLees*, 2000 MT 6, ¶ 9, 298 Mont. 15, ¶ 9, 994 P.2d 683, ¶ 9.

## DISCUSSION

**¶7    Did officers have legal authority to search Schwarz's home based on consent from Schwarz's thirteen-year-old daughter?**

¶8    Since Article II, Section 11 of the Montana Constitution mirrors the Fourth Amendment to the United States Constitution, we analyze most search and seizure issues by applying traditional federal principles. *McLees*, ¶ 23. Unlike its federal counterpart, however, Montana's constitutional scheme affords citizens broader protection of their right to privacy. *See* Article II, Section 10. In Montana, therefore, we analyze search and seizure issues in light of our citizens' enhanced right to privacy. *McLees*, ¶ 28.

¶9    In *McLees*, ¶ 10, this Court noted that "[w]arrantless searches conducted inside a home are *per se* unreasonable, subject only to a few specifically established and well-delineated exceptions." (Citations omitted.) One such exception is a search conducted pursuant to a consent given freely and voluntarily. *McLees*, ¶ 10. We have previously cited the United States Supreme Court's decision in *United States v. Matlock* (1974), 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242, 249-50, for the proposition that "when the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed *common authority* over or other *sufficient relationship* to the premises or effects sought to be inspected."

4

(Emphasis added.) *See McLees*, ¶ 10, and *State v. Sorenson* (1979), 180 Mont. 269, 275, 590 P.2d 136, 140. The *Matlock* court specifically clarified that "common authority" does not necessarily flow from mere property interest.

> The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements, but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

*Matlock*, 415 U.S. at 171, n.7, 94 S.Ct. at 993, n.7, 39 L.Ed.2d at 250, n.7.

¶10    A decade and a half after the *Matlock* decision, the Supreme Court addressed the issue of *apparent authority* in *Illinois v. Rodriguez* (1990), 497 U.S. 177, 186, 110 S.Ct. 2793, 2800, 111 L.Ed.2d 148, 159-60, concluding that "[b]ecause many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability." (Citation omitted.) In *McLees*, ¶ 32, this Court explicitly rejected the *Rodriguez* holding, "refus[ing] to extend the doctrine of apparent authority based on . . . [Montana's] increased right to privacy under Article II, Sections 10 and 11." We held "that for third-party consent to be valid as against the defendant, the consenting party must have *actual* authority to do so." *McLees*, ¶ 32 (emphasis added).

¶11    The question now before this Court is whether a third-party *youth* can provide legal consent to a search. Several courts have addressed this issue, with the majority

5

concluding that "there is no *per se* rule that all minors lack the authority to consent to a search." *Abdella v. O'Toole* (D. Conn. 2004), 343 F.Supp.2d 129, 135. Typically, the consenting party's youth will be one of many factors considered when the trier of fact analyzes the legality of a minor's consent. *See State v. Tomlinson* (Wis. 2002), 648 N.W.2d 367, 376 ("[w]hether the child possesses such authority will depend on a number of factors, and courts must look at the totality of the circumstances to make such a determination"); *State v. Butzke* (Neb. App. 1998), 584 N.W.2d 449, 458 (the court must analyze voluntariness and common authority over the premises, or whether law enforcement reasonably believed the child had apparent authority); *State v. Kriegh* (Kan. App. 1997), 937 P.2d 453, 457 ("[a]lthough age is a factor to consider in ascertaining whether consent was given willingly, minority status alone does not prevent one from giving consent"); *State v. Will* (Or. App. 1994), 885 P.2d 715, 720 ("age is *merely one factor* to be considered in determining the scope of the minor's authority to consent and whether the minor's consent was knowing and voluntary" (citation omitted)); *Saavedra v. State* (Fla. 1993), 622 So.2d 952, 956 ("the State must show by clear and convincing evidence from the totality of the circumstances that the minor gave free and voluntary consent"); *Davis v. State* (Ga. 1992), 422 S.E.2d 546, 549 (a court must "examine a child's mental maturity and his ability to understand the circumstances in which he is placed, and the consequences of his actions"); and *People v. Jacobs* (Cal. 1987), 729 P.2d 757, 764 ("[a]s a child advances in age she acquires greater discretion to admit visitors on her own authority").

6

¶12 In addressing this issue, we recognize that other jurisdictions have chosen not to create a *per se* rule that all youths lack the authority to consent to a search. However, just as we chose not to adopt *Rodriguez*'s apparent authority doctrine in light of Montana's greater right to privacy, so too do we now opt not to march in step with our sister states and the federal courts on the issue of minor consent. Importantly, several of their decisions incorporated the doctrine of apparent authority. Since this Court has explicitly rejected that doctrine, we need only address the narrower question of whether a youth has *actual authority* to consent to a search of her parent's home. We hold that she does not.

¶13 In reaching this conclusion, we observe that in general, a youth does not have authority equal to that of a parent or guardian regarding their shared property. As the Supreme Court of Wisconsin noted, "[a] minor child who lives in the same home with his or her parents or guardians obviously shares use of the property with the parents or guardians to some extent. However, it should also be obvious that a child generally does not share mutual use of the property with a parent to the same extent that such use might be shared between spouses or between cohabitating adults." *Tomlinson*, 648 N.W.2d at 376. Similarly, the Supreme Court of California opined that even if a parent chooses to grant her minor children joint access and mutual use of the home, "parents normally retain control of the home, as well as the power to rescind the authority they have given." *Jacobs*, 729 P.2d at 763. The California court further observed that a parent has not surrendered the privacy of his home to the discretion of a child, but rather, the child has

7

privacy at the discretion of the parent. In other words, "a child cannot waive the privacy rights of her parents." *Jacobs*, 729 P.2d at 763.

¶14   We agree with the above comments and further conclude that in light of Montana's enhanced right to privacy under Article II, Section 10, consent, as an exception to the warrant requirement, must be narrowly construed. Accordingly, we hold that a youth under the age of sixteen does not have the capacity or the authority to relinquish her parents' privacy rights. We find further persuasive authority for this conclusion in the Legislature's enactment of § 41-5-331(2), MCA, which states that a youth under the age of sixteen can only waive her right against self-incrimination with parental permission or with the advice of counsel. Although § 41-5-331, MCA, only addresses a youth's constitutional right against self-incrimination, it nonetheless supports the principle that a minor who cannot waive her own rights without parental permission or legal counsel, cannot waive her parent's privacy rights. *See State v. Allen* (1980), 188 Mont. 135, 612 P.2d 199, involving § 41-5-303, MCA[1] (which referenced all

---

[1]Section 41-5-303, MCA (1980), read:

> When a youth is detained for investigation or questioning upon a matter which could result in a petition alleging that the youth being detained is either delinquent or in need of supervision, the following requirements must be met:
> (1)  The youth shall be immediately and effectively advised of his constitutional rights and his rights under this chapter.
> (2)  The youth may waive such rights under the following situations:
> (a) when the youth is under the age of 12 years, the parents of the youth may make an effective waiver;
> (b) when the youth is over the age of 12 years and the youth and his parents agree, they may make an effective waiver; and

"constitutional rights"), the predecessor to § 41-5-331, MCA, wherein we held that a sixteen-year-old youth could not, without the agreement of her parents or advice of counsel, consent to a search of her *own* apartment. Accordingly, we now adopt a *per se* rule that a youth under the age of sixteen lacks the capacity or the authority to consent to a search of her parents' home.

¶15     Reversed and remanded for further proceedings consistent with this opinion.


/S/ W. WILLIAM LEAPHART



We concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ JAMES C. NELSON
/S/ BRIAN MORRIS

---

(c) when the youth is over the age of 12 years and the youth and his parents do not agree, the youth may make an effective waiver only with advice of counsel.