JUSTICE LEAPHART,
dissenting.
¶77 The Court concludes that William Bruce Ellis, Jr. (Ellis) had a reasonable expectation of privacy in the pajamas and bedding that his daughter was wearing and sleeping in at the time of the assault. As to the victim’s panties, the court reverses, concluding that: ‘The focus is *118 not on the general privacy rights of the child-except where, as with the underwear that S.S. was wearing during the alleged assault-society would recognize as reasonable a person’s privacy interest in the intimate apparel that she or he was wearing at the time.” Opinion, ¶ 35.
¶78 I agree with the Court’s conclusion that society would recognize as reasonable a person’s privacy interest in the intimate apparel that she or he was wearing at the time of the assault and that, ‘Ellis did not have an actual subjective expectation of privacy that society would find objectively reasonable in the underwear that S.S. was wearing at the time the alleged assault occurred.” Opinion, ¶ 61. Having recognized 5.5.’s expectation of privacy in her underwear, and Ellis’s lack of such expectation, the Court fails to follow through on its own logic. First, the Court has recognized that, although the defendant may have a right of privacy in the house, that does not necessarily mean he has a privacy interest in all the contents (e.g. his daughter’s underwear). Secondly, if S.S. had a reasonable expectation of privacy in the ‘intimate apparel that she was wearing” at the time of the assault, why does she not have that same expectation of privacy in the pajamas that she was wearing at the time or the bedding that she was sleeping in at the time of the assault? Are they somehow less ‘intimate” in a constitutional sense? If so, the distinction escapes me.
¶79 As to the question of whether the officer engaged in a search upon entering the living room to talk with S.S., I do not think that it was unreasonable for Officer Murphy, who, in responding to a call about a sexual assault, approached the house not knowing that the victim was a minor and not knowing that the alleged assailant was her father or who else, if anyone, was in the house. It cannot seriously be argued that it was unreasonable for the officer to enter the living room at 5.5.’s request to talk with her. Officer Murphy was legitimately in the house. As the United States Supreme Court recognized in Georgia v. Randolph, 547 U.S. 103, 118, 126 S. Ct. 1515, 1525 (2006):
No question has been raised, or reasonably could be, about the authority of the police to enter a dwelling to protect a resident from domestic violence; so long as they have good reason to believe such a threat exists, it would be silly to suggest that the police would commit a tort by entering, say, to give a complaining tenant the opportunity to collect belongings and get out safely, or to determine whether violence (or threat of violence) has just occurred or is about to (or soon will) occur, however much a spouse or other co-tenant objected. (And since the police would *119 then be lawfully in the premises, there is no question that they could seize any evidence in plain view or take further action supported by any consequent probable cause, see Texas v. Brown, 460 U.S. 730, 737-39, 103 S. Ct. 1535 (1983) (plurality opinion).)
(Emphasis added.) The question before the Court is whether items seized were fruits of a search or were items in which S.S. had a reasonable expectation of privacy and which she voluntary turned over to the police.
¶80 The items in question (bedding, pajamas, and underwear) were not discovered by virtue of a search. Evidence received by way of delivery is not a search; Ta] ‘search’ is a prying into hidden places for that which is concealed ....” State v. Arthun, 274 Mont. 82, 906 P.2d 216, 220 (1995) (citing State v. Carlson, 198 Mont. 113, 118-19, 644 P.2d 498, 501 (1982)). In Arthun, we held that the officers had not conducted an independent inspection of the farm shed. Rather, they entered the shed at the defendant’s invitation and “retrieved the box which Bruce located for them.” We concluded that “there was no prying or investigation, and thus no ‘search’ so as to implicate either the Fourth Amendment or the Montana Constitution.” In State v. Graves, 191 Mont. 81, 622 P.2d 203 (1981) (overruled on other grounds), the defendant had been involved in a knife fight. An officer approached him and asked if he had been involved in the fight. Graves said yes, he had. The officer asked if a knife had been involved. Graves said yes and turned the knife over to the police in response to the officer’s inquiry. The Court held there was no search.
¶81 The officers in the present case did not have to conduct a search for the items at issue. They opened no cupboards, closets, or drawers in order to find them. Rather, S.S. showed the officer her bedroom, retrieved her pajamas, bedding and underwear, and relinquished them to the officer.
¶82 The Court relies heavily on our decision in State v. Schwarz, 2006 MT 120, 332 Mont. 243, 136 P.3d 989. The question in Schwarz was whether a minor child had the capacity to waive the parent’s right of privacy. Unlike this case there was no issue as to whether the child had a superior expectation of privacy in any of the items seized. We did say in Schwarz that “the child has privacy at the discretion of the parent.” Schwarz, ¶ 13.
¶83 We have previously recognized that once a person voluntarily relinquishes or abandons his property, his expectation of privacy in that property is abandoned as well. See State v. 1993 Chevrolet Pickup, *120 2005 MT 180, ¶¶ 14-15, 328 Mont. 10, 116 P.3d 800. The owner’s intent with respect to the property, as determined by his actions or statements, establishes whether the owner has abandoned his property. The same reasoning applies in the present case. Assuming for sake of argument that Ellis bought the bedding, pajamas, and underwear in question and thus, had a proprietary interest in them, he voluntarily relinquished any expectation of privacy in those items when he gave them to S.S. to wear and sleep in. From that point on, society would undoubtedly recognize that S.S. had a reasonable expectation of privacy-not just in the underwear, but also in the bedding and the pajamas she was wearing. Conversely, once Ellis relinquished the items to S.S., he gave up his control of the items and could no longer claim a reasonable expectation of privacy in his daughter’s panties, bedding, or pajamas. As the owner of the home, Ellis could seek to suppress any foundational testimony from the officers about what they saw while in the bedroom or any pictures they took in the home. However, because Ellis did not have a reasonable expectation of privacy in the items themselves, he has no standing to challenge the seizure of those items.[1]
¶84 The Court draws the bold conclusion that ‘S.S. was not asserting her own constitutional rights, rather, she was attempting to waive her father’s constitutional right to privacy.” Opinion, ¶ 35. This is a puzzling conclusion indeed. One would normally conclude that a young girl in S.S.’s situation was concentrating on her own welfare rather than the rights of her alleged assailant. S.S. is a minor who enjoys all the fundamental constitutional rights of an adult. See Mont. Const, art. II, §15. In summoning the police and showing them the evidence that she had been assaulted, she was not seeking to waive her father’s right to privacy. Rather, she was waiving her own rights of privacy and exercising her fundamental right to “defend her life and liberty,” “to seek her safety, health and happiness” under Article II, Section 3 of the Montana Constitution, and her right to individual dignity under Article II, Section 15 of the Montana Constitution.
¶85 As indicated above, I believe that Schwarz is distinguishable in that the evidence here was not the fruit of a “search” of the home, and, secondly, Ellis had no reasonable expectation of privacy in the *121 evidence. However, to the extent that Schwarz is interpreted as dictating the result reached by the Court, I would endorse a victim’s exception to the per se rule that a minor cannot consent to the search of her parents’ home. The exception would be limited to crimes against the person, Title 45, chapter 5, MCA, that were alleged to have been committed against the minor which occurred in the home in question. There should be a distinction between situations in which a minor consents to a search, essentially acting as a third party as between the parent and law enforcement and situations in which the minor, as a first party victim, consents to a search in the interest of asserting her own rights of safety, well-being, and privacy.
¶86 In an apparent effort to foreclose a ‘Victim exception” to the per se rule, the Court suggests that in Schwarz “we considered the possibility of a child calling the police to report a crime” when we cited to the case of Abdella v. O’Toole, 343 F. Supp. 2d 129 (D. Conn. 2004). Opinion, ¶ 40. The Abdella case, however, was cited for the very narrow proposition that the majority of courts hold that “there is no per se rule that all minors lack the authority to consent to a search.” Schwarz, ¶ 11. Notably, the Schwarz Court rejected that majority position. Secondly, Schwarz does not discuss the particular facts or holding in Abdella. Finally, in Abdella, law enforcement officers, looking for Jim Abdella on suspicion of theft, knocked on the door of the Abdella home. Jim’s 11-year-old sister Regina answered and arguably consented to their searching the house for her brother. Regina was neither a victim of nor a witness to a crime, nor had she reported a crime. To suggest that by citing to Abdella in Schwarz this Court has considered and rejected a victim’s exception to the per se rule, strains the holding in Schwarz beyond recognition.
¶87 I conclude that Ellis had no reasonable expectation of privacy in his daughter’s pajamas, bedding, or underwear. In the alternative, to the extent he does have such an expectation, I would adopt a victim exception to the Schwarz per se rule. I would reverse the order of suppression.
JUSTICE MORRIS joins in the dissenting Opinion of JUSTICE LEAPHART.

 Assume A is an overnight guest in B’s house. Unbeknownst to A, B hides some contraband in A’s suitcase. The police enter the home without a warrant and search the home. With A’s consent, they search the suitcase. Does B, as the owner of the home, have an expectation of privacy in A’s suitcase sufficient to support standing to suppress the fruits of the search? I think not.