DISTRICT COURT JUDGE SIMONTON,
dissenting.
¶88 I agree with Justice Leaphart’s dissent, and I feel the Court should take this opportunity to abandon the per se rule of State v. Schwarz, 2006 MT 120, 332 Mont. 243, 136 P.3d 989, for two reasons. First, it is inconsistent with Montana law and our analysis of consent-to-search cases. Rather than perpetuating bad law, the Court should *122 use this opportunity to return to the totality of the circumstances approach. Secondly, holding that a child of thirteen may not invite officers into her home and may not give them evidence that supports her allegation that her father sexually abused her violates her constitutional rights. The Montana Constitution demands that all individuals be provided equal protection under the law and secures to them all fundamental rights whether they be thirteen or sixteen years of age.
¶89 With the exception of Schwarz, this Court has consistently applied a totality of the circumstances test to discern whether the person providing consent had common authority and if that consent was provided voluntarily. State v. Clark, 2008 MT 419, ¶ 27, 198 P.3d 809, 347 Mont. 354 (citing State v. McLees, 2000 MT 6, ¶ 17, 298 Mont. 15, 994 P.2d 683). For example, in State v. Lacey, 2009 MT 62, ¶ 41, 349 Mont. 371, 204 P.3d 1192, we considered whether the area searched and items seized were marked, labeled, locked, or otherwise set apart. We also questioned whether members of the household had limited access to the area searched or if it was a communal space. Lacey, ¶ 41. Further, in State v. DeWitt, 2004 MT 317, ¶ 30, 324 Mont. 39, 101 P.3d 277, we reflected upon whether all of the occupants of the residence used or had general access to the area searched.
¶90 The goal of this multi-factor approach is to determine whether there is a sufficient relationship between the person providing consent and the area to be searched. McLees, ¶ 17; State v. Sorenson, 180 Mont. 269, 275-76, 590 P.2d 136, 140 (1979). As we stated in McLees, the authority which justifies consent rests upon:
mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.
McLees, ¶ 13 (quoting U.S. v. Matlock, 415 U.S. 164, 171, 94 S. Ct. 988, 993 (1974)). In short, when a person allows a third party significant latitude in using or accessing his property, we have held it is reasonable to conclude the owner assumed the risk that the third party would assert control over the premises. See McLees, ¶ 17; Lacey, ¶ 41.
¶91 Schwarz marked the first time this Court did not look at all of the key facts of the case to discern whether the consentingparty possessed *123 the requisite authority to provide consent. Rather than following this well-established process for analyzing consent, the Court in Schwarz zeroed in on one fact-the age of the consenting party. It did so even after acknowledging that the majority of courts in other jurisdictions, which addressed whether a youth could provide consent to search, concluded there was no per se rule that age prevents consent, and these courts declined to create one. The Court refused to follow the majority, concluding that several of those courts relied upon the doctrine of apparent authority, a doctrine we rejected in McLees. However, the majority of those courts did not rely upon the doctrine of apparent authority, and found actual authority for a minor child to consent. See In re Anthony F., 442 A.2d 975 (Md. 1982); Iowa v. Folkens, 281 N.W.2d 1 (Iowa 1979); Ill. v. Swansey, 379 N.E.2d 1279 (Ill. App. 1978); Kan. v. Kriegh, 937 P.2d 453 (Kan. App. 1997); Reynolds v. Tex., 781 S.W.2d 351 (Tex. App. 1989); Doyle v. Alaska, 633 P.2d 306 (Alaska App. 1981); Hembree v. Tenn., 546 S.W.2d 235 (Tenn. Crim. App. 1976); Rajappa v. Ga., 408 S.E.2d 163 (Ga. App. 1991); Minn. v. Lottan, 527 N.W.2d 840 (Minn. App. 1995). Oregon, like Montana, rejected the doctrine of apparent authority and includes age as only one factor to determine whether a third party has actual authority to provide consent to search. Or. v. Will, 885 P.2d 715 (1994). More importantly, we did not abandon the totality of the circumstances approach in McLees. The decisions of these other jurisdictions support the continued use of Montana’s approach that youth is only one of many factors to be considered in determining whether the State obtained lawful consent. Schwarz, ¶ 11.
¶92 Schwarz is premised, in part, on the Court’s observation of disparity between a parent’s authority and a child’s authority over shared property. Schwarz, ¶ 13. The Court accepted California’s conclusion that parents retain control of the family home and have the power to rescind any authority they give away. Schwarz, ¶ 13. Otherwise stated, if parents can give away certain authorities, those authorities should remain with the child until the extension of authority is rescinded. Yet by its adoption of a per se rule, the Court eliminated the possibility that a parent could grant their child certain authority and decide not to rescind it. Since the Court accepted California’s construction of transitory authority, the Court should have looked at the facts of the case to determine whether Schwarz relinquished a sufficient amount of authority to her child, and if she ever rescinded that delegation. That is not what happened. The *124 Court never assessed the degree of authority Schwarz may have extended to her daughter or whether it had been revoked.
¶93 In addition, we have never required a third party to have equal authority over the property to be searched, but reviewed the facts to determine whether the third party enjoyed some common authority. We specifically rejected the argument that payment of living expenses, such as rent and utilities, indicated actual authority, and directed our attention to facts that indicated whether the third party maintained free access to the area as a cohabitant. McLees, ¶ 17; see also Lacey, ¶ 40. While all children depend upon a parent or guardian to provide them with necessities, the age at which children gain independence and acquire substantial responsibility for their own care and that of other members of the household changes according to each family’s unique situation. The Court fails to recognize that.
¶94 Today the Court repeats the mistake it made in Schwarz by ignoring the law established in Montana, reiterated only days earlier in Lacey, that consent is a waiver of the consenter’s rights, not of any other person. The Court declares, ‘In this case and in Schwarz-type cases, however, the focus is on the violation of the privacy rights of the parents.” Opinion, ¶ 36. Apparently Schwarz-type cases are cases where the Court ignores its own precedent, for recently we reiterated in Lacey that third-party consent rests on the assumption that the party provided consent “in his own right,” not on the rights of others who were not present and may or may not have elected to withhold consent. Lacey, ¶ 37.
¶95 Apart from my disagreement with the Court’s approach to analyzing consent-to-search cases involving a minor, I am confused at the Court’s decision that a person cannot assert his or her own right to privacy until he or she reaches the age of sixteen. We are left to wonder why the Court chose sixteen, for the decision does not explain why at sixteen a child acquires sufficient capacity or is able to use the house to such a degree that he or she can then provide lawful consent.
¶96 Obviously, looking for a basis to justify its age limitation, the Court cited §41-5-331, MCA, which prohibits law enforcement from interrogating a youth under the age of sixteen unless a parent has permitted it or an attorney has advised it. It then stated:
Although Section 41-5-331, MCA, only addresses a youth’s constitutional right against self-incrimination, it nonetheless supports the principle that a minor who cannot waive her own rights without parental permission or legal counsel, cannot waive her parent’s privacy rights.
*125 Schwarz, ¶ 14. The Court could just as well have referred to the various statutes concerning sex offenses and the inability of a child under sixteen to consent to sex. Section 45-5-501, MCA. Notably both §41-5-331 and 45-5-501, MCA, are meant to protect the youth, not the parent. These statutes are meant to enhance a youth’s rights; not dilute them in favor of another person’s rights.
¶97 The legislature has often placed children between the ages of twelve and sixteen on the same footing as adults. For example, the consent of a child twelve years of age or older is required for an adoption, and once a child reaches the age of fourteen years, he or she has the right to request an amendment of a parenting plan. Sections 42-2-301 and 40-4-219, MCA A child of twelve can be sentenced as an adult for certain crimes. Section 41-5-206, MCA. The legislature obviously feels that, in certain cases, a twelve year old has the capacity to commit a crime and be prosecuted as an adult.
¶98 To forbid a child under the age of sixteen, who is sexually abused by her father, to provide physical evidence corroborating her report, does not help the child; it strips the child of her own rights and enhances her abuser’s rights. Such a hard and fast rule is inconsistent with the concept of capacity and inconsistent with the legislature’s purposes in protecting children.
¶99 One of the consequences of a per se rule that fails to consider the possibility of exceptions, such as Schwarz, is that it can render unfair consequences. Here, the Defendant’s thirteen-year-old daughter, who resides with him, called the police and told them her father may have assaulted her. Police responded by going to the house and were invited in by the alleged victim. This simple and reasonable entry into the house is illegal according to the Court. Once through the front door, law enforcement questioned the girl about her call. The girl advised the officer that her father had sexually assaulted her and she then showed him her bedroom where the crime was committed, her bedding upon which she was violated, and the pajamas she wore during the assault. She allowed the officers to take the bedding, pajamas, and underwear to be analyzed in order to corroborate her story. Her father had no expectation of privacy in those items, but the Court declares that this was an unreasonable seizure of the pajamas and bedding because there was no search warrant, and suggests the girl could have taken those items to the police as they were standing outside the house, or she could have taken them to the police station. That the girl could have apparently invited her friends into the house and her bedroom, or a pizza delivery person into the *126 home appears insignificant to the Court. That the girl had the authority to preclude her friends and others, besides her father, from her bedroom seems to carry no weight because she was under the age of sixteen.
¶100 It is ironic that the Court touts Montana’s elevated right to privacy as justification for the per se rule, in light of the Constitution’s explicit focus on the child’s own rights and the protection thereof. Article II, § 15 of the Montana Constitution provides that persons under eighteen years have all of the fundamental rights of Article II, including the § 11 right to be free ‘from unreasonable searches and seizures”, unless specifically precluded ‘by laws which enhance the protection of such persons.” Montana Constitution, Article II, §3 includes the right to enjoy and defend one’s life and liberty and the right to seek one’s safety. Article II, §4 of the Montana Constitution includes the right to dignity stating that it is “inviolable” and precluding the denial of equal protection under the law. The Court ignores those rights and their application to a thirteen-year-old girl by insisting that the father’s rights are more important than finding evidence to determine whether a sexual assault has been committed against the girl by her father in her own home.
¶101 The Court has failed to consider that the legislative adoption of a particular age is to protect children. Furthermore, today’s decision poses grave consequences to a child’s own right to seek protection under the law, even when her own parents defy it. The Montana Constitution was never meant to provide a safe haven for defendants charged with committing crimes against children.
¶102 The special facts of this case would have been considered in determining whether the police acted reasonably, had the Court not abandoned the totality of circumstances test. The Court should return to it.